RAILWAY COMPANY *v.* FIRE ASSOCIATION.

Opinion Delivered March 16, 1895.

1. *Foreign corporations—Act of April 4, 1887.*

   Under the act of April 4, 1887, which, in substance, declares all contracts made by a foreign corporation with citizens of this State void as to the corporation unless it has first designated an agent in the State upon whom process may be served, contracts between foreign corporations and persons who are not citizens of the State are under no circumstances declared void as to any one.

2. *Foreign corporation—Doing business in State.*

   One who is sued for the wrongful destruction of property in the possession of a foreign corporation cannot defend upon the ground that the property was acquired by it in the transaction of business in this State, without first complying with the statute prescribing the conditions upon which foreign corporations are allowed to do business here.

3. *Insurance company—Subrogation.*

> Where an insurer against fire voluntarily pays a loss, he becomes subrogated to the rights of the insured to recover the amount so paid from the person causing the loss, whether he was legally bound to indemnify the insured or not; and it is no defense to an action to recover such indemnity that the insurer, as well as the assured, were foreign corporations doing business in this State without having complied with the provisions of the constitution or of the act of April 4, 1887.

4. *Subrogation—Remedy at law.*

> An action by an insurer against fire to recover the amount of a loss paid to the insured from the person who negligently caused such loss is properly brought at law.

5. *Right of foreign corporation to do business in State.*

> Under Const. 1874, art. 12, sec. 11, which provides that no foreign corporation "shall do business in this State except while it maintains therein one or more known places of business and an authorized agent or agents in the same upon whom process may be served," a foreign corporation doing business in the State previous to the passage of the act of April 4, 1887, sufficiently complied with the constitution if it had an agent and a known place of business in the State.

Appeal from Columbia Circuit Court.

CHARLES W. SMITH, Judge.

*Sam H. West* and *Gaughan & Sifford* for appellant.

1. The assignment and pretended subrogation was made in this State, and neither corporation had complied with the act of April 4, 1887, and neither was authorized to do business in this State. 54 Am. Dec. 522; 31 N. J. 531; 95 Am. Dec. 529; 96 *id.* 331.

2. If appellee's right does not depend upon the contract of assignment, but upon the equitable doctrine of subrogation, then the cause should have been transferred to equity. 31 Ark. 411; 37 *id.* 186.

3. The Commercial Company had not complied with sec. 11, art. 12, const.

4. There is a total failure of proof to show that the cotton was set on fire by the engine of appellant.

5. The proof fails to show the value of the cotton. The Insurance Company succeeded only to the rights of the assured, and must make the same proof as the assured would have been required to make. 55 Ark. 175; 34 Ark. 569; 53 *id*. 499.

*B. F. Askew* and *Scott & Jones* for appellee.

1. That the verdict was excessive was not made a ground of the motion for new trial. 23 Ark. 131; 45 *id*. 524.

2. The act of 1887 was not in force when this transaction occurred. 55 Ark. 174.

3. The right of subrogation is clearly stated in May on Insurance, (2 ed.) p. 687.

4: That the assured failed to give immediate notice and furnish proof of loss cannot avail appellant. These matters may be waived by the insurer, and no one else can take advantage of them.

BATTLE, J. This action was instituted by the Fire Association of Philadelphia and the Southwestern Commercial Company against the St. Louis, Arkansas & Texas Railway Company for the recovery of damages incurred through the loss of cotton burned by fire on the first day of April, 1887, at Magnolia, Ark. The Fire Association of Philadelphia was a corporation organized and existing under the laws of Pennsylvania, and was engaged in insuring property against fire; and the Southwestern Commercial Company was a corporation of the State of Missouri, and was engaged in buying and selling cotton. The cotton burned was purchased in this State by the Southwestern Commercial Company, belonged to it, and was insured by the Fire Association against fire by a policy issued to its owner. After the fire, on the 16th of May, 1887, the Fire Association paid to the Commercial Company the sum of $1,478.86 on account of the loss sustained by the burning

of the cotton, and the latter transferred to the former corporation its claim against the defendant for damages. Plaintiffs alleged that the fire was caused by the negligence of the defendant.

The defendant answered; the issues joined were tried by a jury; the plaintiffs recovered a judgment; the defendant appealed; the judgment was reversed by this court; and the cause was remanded for a new trial. *Railway Company* v. *Fire Association*, 55 Ark. 163.

Upon the return of the case to the circuit court, the defendant filed another answer as a substitute for the first, and therein alleged, among other things, as follows:

"First. That the contract of insurance set out in the complaint between the plaintiffs herein was made within the State of Arkansas, and is void, because, at the time of the making of said contract of insurance, the plaintiff, the Southwestern Commercial Company, a corporation, as alleged in the complaint, organized and transacting business under the laws of the State of Missouri, had no legal existence in this State, having never complied with section 11, article 12, of the constitution, and the act of April 4, 1887, so as to authorize it to do any business whatever.

"Second. That the assignment and transfer of the right of said Southwestern Commercial Company to said Fire Association was made in this State, and the pretended subrogation of the latter thereto is void, because, it says, neither of said plaintiffs were authorized to transact corporate business in the State of Arkansas, neither having complied with the act approved April 4, 1887, whereby alone they could be so authorized, and neither having done so at any time prior to the institution of this suit.

      *    *    *    *    *    *    *    *    *

"Tenth. That this court has not jurisdiction to hear and determine this cause, but that, on the contrary, a court of equity alone is competent to hear and determine this cause;" and asked that it "may be transferred to the equity docket.'"

The plaintiffs demurred to the paragraphs of the answer, which are numbered first and second, in so far as they set up the act of April 4, 1887, as a defense; and the demurrer was sustained by the court. The motion to transfer to the equity docket was disregarded, and the issues were tried by a jury. A verdict was returned in favor of the Fire Association. Judgment was rendered accordingly, and the defendant again appealed.

In order to decide the question raised by the demurrer to the answer of the appellant, it is necessary to consider the act of April 4, 1887. That act declares that, "before any foreign corporation shall begin to carry on business in this State, it shall" by a "certificate under the hand of the president and seal of such company, filed in the office of the Secretary of State, designate an agent, who shall be a citizen of this State," upon whom process may be served, and state therein its principal place of business in this State; and provides that if any such corporation shall fail to file such certificate, *all its contracts with citizens of this State shall be void as to it*, and shall not be enforced in its favor by the courts. The sole object of the act, as shown by these provisions, is the protection of the citizen. The contracts affected by it are made with him, and, if entered into in violation of the statute, are void as to the corporation, and no one else. Contracts between foreign corporations and persons who are not citizens are under no circumstances declared void as to any one. The act prescribes the conditions upon which foreign corporations can do business, and declares and limits the penalty of non-compliance. Having done so, the penal consequences cannot

1. Construction of act of April 4, 1887.

be extended beyond the boundaries so defined. *National Bank* v. *Matthews*, 98 U. S. 621; *Union Mutual Life Ins. Co.* v. *McMillen*, 24 Ohio St. 67.

**2. Right of foreign corporation to sue.** Appellees were foreign corporations. The contract of insurance made by them was prior in time to the enactment of the act of April 4, 1887, was not made with citizens of this State, and was a valid contract. Being valid, how could the right to maintain this action be affected by the failure, if any, of the Commercial Company to comply with the condition on which foreign corporations are allowed to do business in this State? The cotton burned was its property, and was in its possession when it was destroyed or injured. No one had a right to forcibly take it from the company, or wilfully or carelessly damage or destroy it, with impunity, because it might have been acquired in the transaction of business by a corporation without first conforming to the laws of this State. *Western Union Telegraph Co.* v. *Union Pac. Ry. Co.* 1 McCrary, 562; *Tenant* v. *Elliott*, 1 B. & P. 3; *Clements* v. *Yturria*, 81 N. Y. 285; *Pfeuffer* v. *Maltby*, 54 Texas, 454; 1 Wharton on Contracts, sec. 352. Should any one do so, it would have a right of action for the injury done, and could bring suit without complying with the laws prescribing the conditions on which foreign corporations are allowed to do business. The right of action, in such a case, would not grow out of or depend on a violation of the law by it, but would be distinct from, independent of, unconnected with, and proximately unaffected by, any business transaction of the company; and the institution or prosecution of a suit would not be a doing business within the meaning of the laws prescribing such conditions. *Railway Company* v. *Fire Association*, 55 Ark. 163.*

*Note—On the question what constitutes doing business by a foreign corporation, see note to *Cone Export & Com. Co.* v. *Poole* (S. C.), 24 L. R. A. 289. (Rep.)

If the cotton of the Commercial Company was injured or destroyed by a fire caused by the negligence of the railway company, the latter was liable to the former company in damages for the injury done. It was no defense for the latter to say that the former was a foreign corporation, and had not complied with the conditions on which it could do business. Such a failure would be no excuse or justification for the appellant's burning or injuring the property of the Commercial Company.

When the cotton was destroyed or injured by the fire on April 1, 1887, the Insurance Company had a right to pay the loss incurred, and thereby relieve itself of liability for the same. It was not compelled to wait until a court of competent jurisdiction adjudged that it was liable. When it paid the loss, it succeeded and became entitled to the rights of the Commercial Company to relief against the appellant, to the extent of the amount paid as indemnity. The Commercial Company could not defeat this right by showing that it had not performed the conditions on which foreign corporations are permitted to do business. *Hagerman* v. *Empire Slate Co.* 97 Pa. St. 534; *Ehrman* v. *Teutonia Ins. Co.* 1 McCrary, 123. With the defenses the Fire Association had against the right of the assured to indemnity under the contract of insurance, appellant had no concern, or right to set them up in this action. It was bound to make satisfaction for the damages occasioned by its negligence. It was not relieved of this liability by the acts of the other corporations. When the Commercial Company accepted the indemnity, the Insurance Company became subrogated to its rights against appellant, and empowered to work out or enforce them by a suit at law in its name and right, and in the right of no other person; and this authority existed although the Fire Association was not legally bound to indemnify the assured for the loss sustained. *Insurance Co.* v. *The "C. D.*

*3. Subrogation of insurer to insured's rights.*

*Jr.*" 1 Woods (U. S. Ct.) 72; *Propeller Monticello* v. *Mollison,* 17 How. (U. S.) 152; 2 May on Insurance (3 ed.) sec. 454.

The fact that the Commercial Company assigned its rights against the appellant to the Fire Association by an instrument of writing did not affect the remedies of the parties to this action. Assume that it was void because the parties to the same, in executing it, transacted business in violation of the act of April 4, 1887, and the rights of the Fire Association remain unaffected, because the rights which the Commercial Company thereby undertook to assign vested in the Insurance Company before its execution. *Railway Company* v. *Fire Association,* 55 Ark. 163.

For the reasons given we think that the demurrer to the answer was properly sustained.

4. Remedy is at law.

It is contended by appellant that this action should have been transferred to the equity docket. In this it is also in error. It is well settled that suits based on causes of action like the one sued on in this case should be brought at law, and in the name of the assured, and can be brought without his consent. *Monmouth Ins. Co.* v. *Hutchinson, etc. R. Co.* 21 N. J. Eq. 107, 117; Sheldon on Subrogation (2 ed.) sec. 231.

5. Right of foreign corporation to do business in the State.

The appellant contends that the evidence failed to show that the Commercial Company complied with sec. 11, art. 12, of the constitution. This section declares that no foreign "corporation shall do business in this State except while it maintains therein one or more known places of business and an authorized agent or agents in the same upon whom process may be served." It is not self-executing. It does not provide how the agent shall be designated, or how the place of business shall be made known. The Commercial Company had no right to say upon what agent process may be served. The legislature alone had the right. Until it exercised

it, there was no penalty for the violation of the constitution in that respect. In this case, however, the evidence shows that the company had an agent and a place of business in this State, while it was engaged in purchasing cotton. In this way it complied with the constitution, in so far as it could in the absence of legislation. By so doing, it assented to the conditions of the constitution, and authorized service of process upon its agent, to the extent of its ability, there being no statute directing it how to designate any particular agent for that purpose. *St. Clair* v. *Cox*, 106 U. S. 356.

But assuming that the Commercial Company could, but did not, comply with sec. 11, art. 12, of the constitution, the failure to do so was no defense in this action, as we have attempted to show.

The evidence was sufficient, in this court, to sustain the verdict of the jury.

Judgment affirmed.

Bunn, C. J., being disqualified, did not participate.