PRATT LABORATORIES, Inc., a corporation, Plaintiff,

v.

F. A. TEAGUE, Defendant.

Civ. A. No. 421.

United States District Court
W. D. Arkansas,
Harrison Division.
March 27, 1958.

Moore, Burrow, Chowning & Mitchell, Little Rock, Ark., for plaintiff.

Rex Perkins, Fayetteville, Ark., J. E. Simpson, Berryville, Ark., E. J. Ball, Fayetteville, Ark., for defendant.

JOHN E. MILLER, District Judge.

On October 30, 1957, the plaintiff, Pratt Laboratories, Inc., filed its complaint against the defendant, F. A. Teague, alleging that the plaintiff is a Pennsylvania corporation; that the defendant is a citizen of Berryville, Arkansas; and that the matter in controversy exceeds the sum of $3,000, exclusive of interest and costs. The plaintiff further alleged:

"Plaintiff, Pratt Laboratories, Inc., is one and the same corporate entity as Pratt Food Company, its name having been changed to Pratt Laboratories, Inc., by corporate action on or about the 15th day of August, 1957.

"The defendant, on or about April 9th, 1952, became indebted to the plaintiff in the sum of Thirty-eight Thousand Dollars ($38,000.00), and executed and delivered to the plaintiff his promissory note for said amount on April 9th, 1952, due and payable on December 31, 1952, with interest until paid at the rate of four per cent (4%) per annum. * *

"The said promissory note is now past due, plaintiff has made repeated demands upon the defendant for payment, and he has failed and refused to pay said indebtedness."

Attached to the complaint is a copy of the note sued upon.

On November 25, 1957, the defendant filed his motion to dismiss on the ground that the plaintiff is a foreign corporation doing business in the State of Arkansas without first having qualified to do such business, and that said plaintiff has no legal right to · maintain this action. This motion is now before the Court on the record and briefs of the parties.

On December 30, 1957, upon motion of defendant and with the consent of the plaintiff, the Court entered an order making all the pleadings, files, orders, documents, and records in Civil Action No. 354, entitled Pratt Food Company, a corporation, v. F. A. Teague, a part of the defendant's pleadings and of the record in the instant case.

On January 29, 1958, the defendant filed an affidavit in support of his motion, attaching thereto certain letters and documents.

The record in Civil Action No. 354 discloses that on March 31, 1953, Pratt Food Company filed its complaint against F. A. Teague based upon the same note now sued upon in this action. On April 20, 1953, Teague filed a motion requesting an audit from the plaintiff. Attached to the motion was a copy of the agreement made in connection with the $38,000 note. Said agreement provides, as follows:

"Whereas certain differences have arisen between Pratt Food Company (hereafter called Pratt) and F. A. Teague (hereafter called Teague) and the parties are desirous of settling same:

"Teague agrees as follows:

"1. To deliver herewith a promissory note in the amount of 38000 dollars payable to Pratt and due December 31, 1952.

"2. To deliver to First National Bank, Berryville, Ark. an assignment wherein and whereby Teague assigns to Pratt $38000 of the proceeds of a certain sale of a farm owned by Teague which sale is covered by an agreement of sale dated March 22, 1952 between Teague as seller and J. D. Vandergriff as buyer and which agreement of sale is presently lodged with said Bank as escrow agent.

"3. To release Pratt from any and all claims, demands or liabilities under any contracts heretofore or presently existing between Pratt and Teague and more particularly a distributors contract dated March 13, 1950 and a disputed contract contained in an offer by Pratt dated February 13, 1952.

"4. That nothing contained herein to be considered as affecting certain trade acceptances presently outstanding in the amount of $13628.25 which will remain as an obligation of Teague and will be paid as they become due.

"Pratt agrees as follows:

"1. To release and discharge Teague for any and all liability in connection with any open book account (except as stated above) and ascertain 1951 chattel mortgage which mortgage shall be released of record and the note given in connection with the same shall be returned to Teague when the $38000 above mentioned shall have been paid.

"2. To examine its records to ascertain whether Teague has been given the proper credit concerning the purchase of feed for Ed. Rassmussen and also for the purchase of certain turkey poults during the year 1950. If said credits were not properly given in either instance then to allow the same against the aforementioned $38000.

"In Witness whereto the parties have affixed their signatures this 9th day of April 1952.

Pratt Food Company
By /s/ M. J. Seie
/s/ F. A. Teague
F. A. Teague"

On July 6, 1953, Teague filed a motion to dismiss Civil Action No. 354 on the ground that plaintiff, a foreign corporation, was doing business in Arkansas without being qualified to do so, and therefore could not maintain an action in the Arkansas courts. Attached to the motion to dismiss were certain affidavits and exhibits, together with a certificate of the Secretary of the State of Arkansas certifying that there was no record of Pratt Food Company having been qualified to do business in Arkansas. While the motion was pending and on September 10, 1953, the plaintiff, Pratt Food Company, moved to be allowed to take a nonsuit, which was granted, and the suit was dismissed without prejudice.

### Discussion

In the instant action, Civil No. 421, the defendant contends that the record here-

in, together with the record in Civil No. 354, establishes without doubt that plaintiff cannot maintain this suit. Contrarily, plaintiff contends that even though it was doing business in Arkansas without having been qualified to do so, nevertheless it is not prohibited from bringing this action.

Prior to the decision of the Supreme Court in Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, some courts had held that a statute prohibiting suit in a state court by a foreign corporation not qualified to do but doing business in the state applied only to actions brought in the state court, and did not prevent the foreign corporation from bringing an action in the federal courts. See cases cited in California Brewing Co. v. Rino, D.C.Idaho, 143 F.Supp. 801.

█ It is now well settled, however, that if a suit is barred in the state court, it is also barred in the federal courts. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; Rock-Ola Mfg. Co. v. Wertz, 4 Cir., 249 F.2d 813; Hicks Body Co. v. Ward Body Works, 8 Cir., 233 F.2d 481; California Brewing Co. v. Rino, supra.

Thus, the Court must determine whether plaintiff is entitled to bring the action under the Arkansas law. Ark. Stats.Ann. Sec. 64–1201 (1947), inter alia, provides:

"Every company or corporation incorporated under the laws of any other State, territory, or country, including foreign railroad and foreign fire and life insurance companies, now or hereafter doing business in this State, shall file in the office of the Secretary of State of this State a copy of its charter or articles of incorporation or association, or a copy of its certificate of incorporation, duly authenticated and certified by the proper authority, together with a statement of its assets and liabilities and the amount of its capital employed in this State, and shall also designate its general office or place of business in this State, and shall name an agent upon whom process may be served."

Section 64–1202, inter alia, provides:

"Any foreign corporation which shall fail to comply with the provisions of this act [§§ 64–1201, 64–1202], and shall do any business in this State, shall be subject to a fine of not less than $1,000 * * * and as an additional penalty, any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make any contract in the State which can be enforced by it either in law or in equity, and the complying with the provisions of this act after the date of any such contract, or after any suit is instituted thereon, shall in no way validate said contract."

For a general discussion of these statutes, see Leflar, Conflict of Laws, Secs. 50, 54–57.

Plaintiff alleges that it is the same corporate entity as Pratt Food Company, and in any event the statutes would apply to an assignee or successor of a foreign corporation, Republic Power & Service Co. v. Gus Blass Co., 165 Ark. 163, 263 S.W. 785; Hogan v. Intertype Corp., 136 Ark. 52, 206 S.W. 58.

In the instant case the plaintiff has not qualified to do business under Sec. 64–1201, and thus the question presented is whether plaintiff has done any business in this State, and if it has, whether it is precluded from bringing this suit by reason of 64–1202, supra, providing that such a corporation "cannot make any contract in the State which can be enforced by it either in law or in equity".

It may be stated at the outset that the instant case on its face appears to fall within the provisions of the statute. That is, plaintiff is a foreign corporation; it has not qualified to do business in Arkansas; it has done business in Arkansas; and the contract upon which it is suing was made in Arkansas.

■ However, the statute does not make such contracts void. Hicks Body Co. v. Ward Body Works, supra. And the statute does not apply to contracts relating solely to interstate commerce. L. D. Powell Co. v. Rountree, 157 Ark. 121, 247 S.W. 389, 30 A.L.R. 414; The W. T. Rawleigh Medical Co. v. Rose, 133 Ark. 505, 202 S.W. 849. In the Rawleigh case, the court at page 513 of 133 Ark., at page 851 of 202 S.W. said:

"We do not understand that the act in question applies to foreign corporations engaged in interstate commerce. It is not within the police power of the state to place burdens upon individuals or corporations engaged in interstate commerce unless the burden is sanctioned by Congress. Crenshaw v. State of Arkansas, 227 U.S. 389, 33 S.Ct. 294, 57 L.Ed. 565."

Various courts have also recognized certain other exceptions to the application of similar statutes. One such exception, relied on by plaintiff in the instant case, is the rule adopted by some authorities that an agent is estopped to assert noncompliance by his principal, a foreign corporation, with the statute when the corporation seeks to enforce a liability growing out of the agency. See, 23 Am.Jur., Foreign Corporations, Sec. 445, and cases there cited.

But the Arkansas Supreme Court has not recognized this exception. In Eisenmayer Milling Co. v. George E. Shelton Produce Co., 176 Ark. 620, 3 S.W.2d 688, the action was one by a foreign corporation against its agent. The agent was selling flour for the foreign corporation, and was to remit the proceeds to the corporation. The agent failed to pay for a portion of the flour and the foreign corporation brought suit against the Agent. The court held that the foreign corporation was doing business in Arkansas in violation of the statute, and therefore could not maintain the suit against the agent.

Likewise, in The J. R. Watkins Medical Co. v. Williams, 124 Ark. 539, 187 S.W. 653, the action was one by a foreign corporation against its agent, and the court held the statute applicable.

It is true that no contention seems to have been made in these two cases concerning an exception to the statute based on the agency relationship of the parties. But the court, at least tacitly, held that the principal-agent relationship of the parties did not preclude the applicability of the statute.

■ Another exception to the statute, relied upon by plaintiff, is that it does not apply to executed contracts. In this connection, in Republic Power & Service Co. v. Gus Blass Co., supra, the court, at page 169 of 165 Ark., at page 787 of 263 S.W., said:

"It is insisted that, although the contract may be an intrastate one and void under the statute, and not enforceable under it, a different rule prevails where the contract is fully executed.

"It is pointed out that the former decisions of this court are in line with this doctrine, and fully recognize the distinction between executory and executed void contracts, to the effect that, while suits to enforce the former may always be defended on the ground of their invalidity, no relief prayed on such ground can be granted with respect to the latter."

See also, Haberman v. Equitable Life Assurance Society, 5 Cir., 224 F.2d 401, 407; Annotation, 7 A.L.R.2d 256; 23 Am.Jur., Foreign Corporations, Sec. 356.

■■ The difficulty with this contention is that the contract in question is not an executed contract within the meaning of these decisions. As stated in Republic Power & Service Co. v. Gus Blass Co., supra, "an executed contract is one where whatever is contracted to be done on either hand has been done". Here the defendant apparently has contracted to pay plaintiff $38,000, but payment has not been made. Payment not

having been made, the contract is not executed.

■ The exception with respect to executed contracts simply recognizes the fact that when a contract has been completely executed and property rights have vested, then the foreign corporation can take necessary action to protect its property rights so long as it does not rely on a contract barred by the statute. In Jerrold-Stephens Co. v. Gustaveson, Inc., D.C.Mo., 138 F.Supp. 11, 15, the court, concerning Missouri law, said:

"The Missouri courts have always and uniformly protected the property rights of such corporations, even though growing out of contracts held 'void' because the corporation was unlicensed in Missouri when they were made, whenever it could do so without giving effect to the void contract itself. That plaintiff had a legally recognized and protectable property right in these 'trade secrets' under the law of Missouri and, generally, is not deniable, and, therefore, it makes no difference to this case whether the employment contract be held void or not, for this is not an action on, or to enforce, the contract."

See also, Railway Co. v. Fire Ass'n, 60 Ark. 325, 30 S.W. 350, 28 L.R.A. 83.

■ Another argument made by plaintiff is that to enforce the statute would be to cause a forfeiture. Be that as it may, the statute if applicable must be enforced by the court. In Republic Power & Service Co. v. Gus Blass Co., supra, at page 170 of 165 Ark., at page 787 of 263 S.W., the court said:

"The statute, however harsh its terms may be, is, as we have already seen, a valid and enforceable act. It provides, in express terms, that any foreign corporation which has failed to file its articles of incorporation or certificate as provided, cannot make any contract in this State which can be enforced by it, either in law or in equity."

Still another contention made by plaintiff is that the contract was to be performed outside the State of Arkansas, and thus the statute has no application. There are two answers to this contention. (1) The transactions upon which the note is based, or at least a substantial part of them, apparently were conducted in Arkansas. In this connection, in suits on notes, the Arkansas Supreme Court seems to look behind the notes to the underlying transactions to determine whether the statute is applicable. In this regard, in Hogan v. Intertype Corp., supra, at page 56 of 136 Ark., at page 59 of 206 S.W., the court said:

"We think the notes and mortgage evidenced a contract made by the corporation in violation of the statute laws of the State. The defect was inherent in the notes and mortgage, and therefore a subsequent purchaser must take notice of the defect."

See also, Dean v. Caldwell, 141 Ark. 38, 216 S.W. 31.

(2) The statute does not concern itself with the place of performance, but merely refers to the place of the making of the contract, and the note sued upon was executed in Arkansas. It is true that in Hicks Body Co. v. Ward Body Works, supra, the court stated that it was possible that the Arkansas court might hold the statute inapplicable to contracts to be performed outside the State, but this Court is convinced that the Arkansas court would apply the statute to notes executed in Arkansas and payable elsewhere, at least where the notes were based on intrastate transactions.

The remaining legal contention of plaintiff is that the note arises out of transactions which were at least in part in interstate commerce, and that the statute has no application to that part of the obligation arising out of interstate transactions.

■ Unquestionably, if the note in the instant case is based entirely on intrastate transactions, the statute would

apply, even though the plaintiff is engaged in interstate commerce as to other ventures. Conversely, even though plaintiff has done intrastate business in Arkansas without being qualified to do so, nevertheless it could recover on the note in question if the note is based on transactions which were entirely interstate in character. Continental Supply Co. v. Hoffman, 1940, 135 Tex. 552, 144 S.W.2d 253; Mergenthaler Linotype Co. v. Spokesman Publishing Co., 1928, 127 Or. 196, 270 P. 519; 20 C.J.S. Corporations § 1840a, p. 57.

The Court, after studying the entire record in this action and in Civil No. 354, is unable to say whether the note involved herein is based entirely on intrastate transactions, is based entirely on interstate transactions, or is based partly on interstate and partly on intrastate transactions. If it should develop that the latter is true, i. e., the note is based partly on interstate and partly on intrastate transactions, it would then be necessary for the Court to determine whether plaintiff would be entitled to maintain an action for that part of the obligation founded upon interstate transactions.

■ For the purposes of the motion to dismiss, however, the Court is of the opinion that it should not determine the effect of such a factual finding at this time. If it should be determined that the pertinent transactions were solely intrastate, the case would be dismissed; if they were solely interstate, plaintiff could maintain the action; and if they were partly interstate and partly intrastate, then the Court would be required to decide whether plaintiff could maintain the action on the interstate portion or whether plaintiff would be completely barred from pursuing the action.

Since the Court cannot determine from the present record whether the transactions upon which the note is based were interstate, intrastate, or both in nature, defendant's motion to dismiss must be overruled, and an order to that effect is being entered today.