STEELCOTE MANUFACTURING COMPANY v. BYRNES.

Opinion delivered March 5, 1928.

1. SALES—UNSIGNED INSTRUMENT OF GUARANTY.—In an action on a verified account for paints sold, it was error to admit an unsigned printed form with the seller's name printed at the bottom as a written guaranty, where an unfilled blank indicated that the instrument was to be executed by the seller's general manager, and was not intended as a final signature authenticating a guaranty.

2. SALES—RIGHT TO RECOVER FOR BREACH OF GUARANTY.—Where paint was purchased under an alleged guaranty to keep the surface of a roof in water-proof condition for ten years, the buyer could not recover because of water coming through a leaky roof; where the proof did not show that he notified the seller that the paint was unsatisfactory or demanded that he furnish new paint to make the roof water-proof.

3. SALES—BREACH OF GUARANTY—BURDEN OF PROOF.—In an action on a verified account for roofing cement sold, where the buyer admitted delivery of the cement on contract of purchase at agreed price, the burden was on him to show that the material purchased was unfit for the purpose intended.

4. APPEAL AND ERROR—REFUSAL TO DIRECT VERDICT.—It was not error to refuse to direct a verdict where the evidence was conflicting.

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; reversed.

*W. Irvine Whitty,* for appellant.

*J. Wythe Walker,* for appellee.

KIRBY, J. Appellant brought suit in a justice court in Prairie Township, Washington County, on a verified account for $83.45, for roofing paint sold to A. M. Byrnes, and recovered judgment by default, from which Byrnes appealed to the circuit court, where, upon the trial, appellee recovered judgment for the sum of $90, from which this appeal is prosecuted.

It appears from the testimony that appellant sold, on open account, for $83.45, and shipped the paints to appellee on May 7, 1924, and, although it had written many letters about it, no reply had ever been received, and the account remained unpaid when suit was brought on October 31, 1925.

It was usual to make a written guaranty of the paints, when requested, on a standard printed form, but none was made to Byrnes, but an unsigned copy of the printed form of guaranty, upon the back of which the instructions for application of the paints were printed, was sent him.

Appellee testified that he had been a contractor and builder for 50 years, and purchased from an agent of appellant some roofing paint "Niedtcote Liquid Roofing Cement" for repainting his two brick buildings, upon which he was given a guaranty. Offered in evidence a copy of the printed form, which, being objected to as not signed, he then introduced, over appellant's objection, the copy attached to the deposition of Niedt, a member of appellant firm. The printed form introduced had the words "Steelcote Manufacturing Company" printed at the bottom and a blank, "general manager," but the blank was not filled or signed at all. Said the agent agreed to send the guaranty when he bought the paint, and did so. That he got it by mail afterwards. Stated the paints were received, and he instructed the man who did the work to put it on according to the directions on the back of the guaranty, and supposed he did so. After it was put on the tenants complained of the roof leaking "right along," and he went down and examined it, and found the water was running down on the cars in the showroom, and he had it fixed twice, the last time at a cost of $46.10 for material, and the first time for $15 or $16, and half of the roof was still in bad condition. The stuff didn't stand the weather for a year. Said he had not written to the company that the paint was unsatisfactory, but told his daughter to do so, and didn't know whether she had done so. That he had told an agent of the company that he had been damaged more than the price agreed to be paid for the paint, and did not owe the company anything. Admitted, on cross-examination, that he bought the paint before he received the guaranty; that the agent told him the company would guarantee it for 10 years, and that he took his word for it.

· Perry stated he was a carpenter; had repaired the roof of the building about three weeks before the trial; found it leaking and full of cracks, and the water washing the plaster off. Repaired the roof on the east side; stated the amount charged therefor, and that the roof on the west side was not fixed, but needed repairing. The roofing that had been on was not good. Water went right through it. Said he was a carpenter, not a painter. Had never used the kind of roofing paint purchased from appellant, and knew nothing about it.

Byrnes testified it would cost from $75 to $100 to repair the plastering.

The court refused to direct a verdict for appellant, and from the judgment on the verdict against it the appeal is prosecuted.

Appellant rightly insists that the court erred in permitting the unsigned printed form to be introduced in evidence as a written guaranty. The printed name of the firm, followed by "............................, general manager," with the blank unfilled, indicated that the instrument was to be further executed, and was not intended as a final signature authenticating the guaranty, and the court erred in holding otherwise. *Lee* v. *Vaughan Seed Store,* 101 Ark. 68, 141 S. W. 496, 37 L. R. A. (N. S.) 352, 25 R. C. L. 302.

. . No attempt was made to show that the salesman had any authority to bind the appellant company other than that possessed by an ordinary traveling salesman to receive and transmit orders (*Markstein Bros. Co.* v. *J. A. White & Co.,* 151 Ark. 1, 235 S. W. 39), and, under the terms of the alleged guaranty, if it had been executed and valid, it only bound the seller, if the paint failed "to give perfect satisfaction for ten years," to "furnish the user, without charge, a sufficient quantity of Niedtcote liquid roofing cement to keep the surface in waterproof condition until the ten years expire," and, had the terms been strictly complied with, the purchaser would only have been entitled to demand and receive more paint—"a sufficient quantity * * * to keep the surface in waterproof condition * * *."

The proof does not show that appellee notified appellant that the paint was unsatisfactory, and he does not even claim to have demanded that he be furnished new paint to make his roof waterproof, and in no event could he recover damages to his building caused by water coming through the leaky roof.

No case was made authorizing the recovery of special damages or damages to the building for a breach of warranty, if there had been such warranty that a breach of it could have entitled plaintiff to recover such damages, and appellee, having admitted the delivery of the roofing cement upon his contract of purchase for the amount agreed to be paid, was bound to the payment thereof, unless he could show that the material was unfit for the purpose for which it was sold and purchased—worthless, in fact—and the burden was upon him to do this.

We cannot say that there is no conflict in the testimony and that the undisputed evidence shows the appellee entitled to recover the contract price of the paints delivered, although such appears to be well nigh the case, and on that account we do not hold that the court erred in refusing to direct a verdict in appellant's favor.

The judgment is accordingly reversed, and the cause remanded for a new trial.